# United States Court of Appeals
## For the First Circuit

---

No. 06-2731

UNITED STATES OF AMERICA,

Appellee,

v.

GARY HICKS,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Lynch, Chief Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

---

Edward E. Eliot for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Sandra R. Beckner, Assistant United States Attorney, were on brief, for appellee.

---

June 26, 2008

---

**HOWARD**, **Circuit Judge**.  Gary Hicks pled guilty to two counts of possession with intent to distribute cocaine base, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(B).  He seeks to have that guilty plea invalidated on a number of grounds, all of them related to problems with his counsel and consequent irregularities in the proceedings surrounding his plea and sentencing.  We hold two of his allegations meritless and two others better suited for collateral proceedings.  We therefore affirm the district court.

## I. Facts[1]

The defendant was indicted for selling crack cocaine on two occasions.[2]  Hicks's appointed counsel obtained a continuance to review the discovery, which included videotape of the drug transactions.  Hicks received a proposed plea agreement from the government, but it expired without his acceptance of the terms proposed.[3]  There is some disagreement about the extent of Hicks's discussions with his counsel about the plea agreement.  Hicks initially told the district court that counsel met with him at

---

[1]    Because one of Hicks's contentions is that his guilty plea was not voluntary and intelligent, we will note differing versions of the facts as we relate them.  We do not, however, express thereby any opinion about the strength of Hicks's claim.

[2]    The parties disagree about whether the buyer was a "DEA agent" or a "DEA informant," but the disagreement is not material to our discussion.

[3]    The government asserts that the proposed plea deal would have prevented the government from filing a sentence enhancement information pursuant to 21 U.S.C. § 851.  Hicks claims on appeal that the nature of the deal is unclear.

10:30 in the morning saying the deal would be off the table at 4:00 that afternoon. On further questioning Hicks conceded that counsel had gone over the plea agreement "very quickly" with him once prior to that date.[4] Defense counsel stated for the record that he had met with Hicks and discussed the plea agreement three separate times before the deadline passed. In any event, the plea offer expired, the government filed an information, and the case was set for trial.

On the day of jury empanelment, Hicks addressed the court. He offered to waive his speedy trial right in order to secure a continuance, but the motion was denied. His counsel moved to withdraw.[5] The district court questioned both Hicks and his counsel about their relationship. Hicks said he was dissatisfied

---

[4]    As noted below, during the plea colloquy, Hicks again acknowledged that his counsel had reviewed the proposed plea agreement with him prior to the day it expired.

[5]    Counsel said:
> Early on during the course of my conversations with this defendant, and because of his lack of willingness to accept any of the advice I have given him, I mentioned to him that perhaps the thing I should do would be to file a motion to withdraw.
> In considering that myself personally, I decided not to do that because I thought the Court would be very reluctant to grant such a motion. This afternoon when he was brought in the courtroom, he asked me whether or not I had made such a motion. I told him I had not.
> Out of an abundance of caution and because of his perceived distrust and lack of cooperation with me and refusal to take my advice, I would now make such a motion.

with counsel because of the short timeline for accepting or rejecting the plea deal, and because of counsel's advice that he accept the plea deal. The district court assured Hicks that his counsel was "one of the most experienced criminal lawyers in the entire state" and that "if [he] is giving you legal advice, you can rest assured that he knows what he's talking about." The court then denied the motion, saying, "[I]f the reason you're asking him to get out of the case is because you don't agree with something that was in the plea agreement, that's not a valid basis for me to grant the motion." Jury empanelment proceeded without further issue.

On the morning that the presentation of evidence was to begin, Hicks once more expressed dissatisfaction with his counsel and declared that he did not wish to go forward with the trial. On further questioning by the court, Hicks asserted a conflict of interest with counsel as well as a lack of confidence in counsel. The district court put to Hicks that he had two choices: go to trial with his appointed counsel or plead guilty without the benefit of a plea agreement. Hicks consulted with counsel twice, at his own request. Counsel stated that Hicks merely kept repeating that he did not wish to go forward with the trial. Once more the district court assured Hicks that his counsel was competent, calling him "one of the five top criminal defense

lawyers in the state."  Hicks repeated that he did not have confidence in his counsel.  He elaborated:

> I don't think he's properly prepared.  I told him several times of witnesses that he should subpoena for this trial.  He has not mentioned one witness that I told him about. . . . He hasn't even conferred with me on how he's going to defend me.  I think that's pretty important.  I think I should know how I'm going to be defended in a trial that has to do with me.  He came to visit me Friday for four minutes.  Four minutes.

The district court then directed counsel to confer with Hicks and explain how he intended to conduct Hicks's defense. After this third conference, with Hicks still unwilling to proceed to trial, the district court began the plea colloquy.

During the plea colloquy Hicks elaborated on his lack of confidence in his counsel.  He acknowledged that counsel had presented the plea agreement to him on two occasions, and admitted that "the plea agreement was, in turn, not that bad of a deal."  He explained that counsel did warn him that refusing the plea agreement might double his sentence, but that counsel had not been able to speak in concrete terms about the sentence Hicks might face.  The district court explained to Hicks that counsel was right.

Although Hicks said of his counsel, "I don't blame him for anything," later in the colloquy Hicks took issue with "the way the message was being delivered."  He said that although he had been arrested on May 15, counsel did not visit him until "well

after" June 26, despite what Hicks characterized as "continuous" requests from Hicks's family members that counsel go and see him.

After the colloquy, the district court found Hicks's plea to be knowing, voluntary and intelligent and entered a judgment of guilty on both counts. Sentencing was scheduled for December 1, 2006.

At sentencing, the district court inquired as to several objections Hicks made to the pre-sentence report. One of these merits discussion here. Hicks, by himself, claimed that the plea should be set aside as involuntary. His counsel stated he did not know of any ground on which he could argue that the plea was involuntary, and suggested that Hicks might wish to address this himself. The district court treated this as a motion to withdraw a guilty plea and denied it, reiterating that the guilty plea had been knowing, voluntary and intelligent. After Hicks exercised his right of allocution, the district court sentenced him to the statutory mandatory minimum: incarceration for 120 months followed by 8 years of supervised release.

## II. Discussion

Hicks raises several claims on appeal. He contends that the district court improperly participated in plea discussions by vouching for defense counsel and asserting that whatever advice he was offering was sound advice. In the specific context of this case, Hicks argues, this amounted to judicial pressure to plead

guilty.  He also makes a cluster of arguments that all relate to the adequacy of his representation:  that the district court should have allowed his counsel to withdraw and appointed new counsel, that counsel was ineffective, and that the guilty plea was involuntary because counsel's lack of trial preparation coerced the plea.

Our examination of the record convinces us that the district court did not improperly participate in plea negotiations. Nor did the district court abuse its discretion in refusing to allow counsel to withdraw.  The other claims, of coercion in his plea and ineffective assistance of counsel, are properly brought in a collateral proceeding; the record here is insufficient to find inadequate representation, which is the issue central to the remaining claims.  Consequently, we affirm the district court.

## A. Improper judicial participation in plea negotiations

Hicks claims that the district court improperly participated in plea negotiations.[6]  He argues that the district court indirectly recommended that Hicks plead guilty when it told Hicks that whatever advice counsel was giving him was good advice.

Federal Rule of Criminal Procedure 11 governs plea negotiations.  It permits the government and defendant's counsel to discuss a plea agreement and explicitly provides, "The court

---

[6]    Hicks cites neither Federal Rule of Criminal Procedure 11 nor any cases decided thereunder, but we take this to be his argument.

must not participate in these discussions." Id. at § 11©). In this case, however, the district court's comment came in the absence of any plea agreement discussions. Indeed, defense counsel admitted that the proposed plea agreement had "gone by the boards weeks ago." Consequently, the strictures of Rule 11(c) are not applicable.

Judicial coercion of defendants to plead guilty, even in the absence of plea agreement discussions, is a matter of serious concern.[7] Hicks cites Longval v. Meachum, 693 F.2d 236 (1st Cir. 1982), for the proposition that a district court can taint proceedings by impermissibly pressuring a defendant to plead guilty. That case held that comments from the bench that could have created a "reasonable apprehension of vindictiveness" required remand for resentencing after the defendant declined the trial judge's invitation to plead, was convicted by a jury, and sentenced much more harshly than the plea agreement would have provided. Id. at 237 (quoting Blackledge v. Perry, 417 U.S. 21, 28 (1974)). Here, however, there is nothing to support that kind of apprehension. Contrary to Hicks's assertion on appeal, the district court did not tell Hicks he "should listen to [counsel's] advice." Rather, the transcript reveals different language: "He's

---

[7] Hicks does not venture beyond asserting that the district court's comments amounted to "judicial coercion": he cites no relevant rule, and only one case. But we sketch the contours of our thinking in order to put to rest the idea that any impropriety occurred.

given you advice. You can rest assured it's sound and good legal advice." Further, this was not in the context of whether to plead guilty or proceed to trial: it took place immediately before jury empanelment, with no deal on the table and no guilty plea on the horizon. The context was a motion to withdraw, and Hicks was explaining why he wanted new counsel. In this context, Hicks offered his prior disagreement with counsel's advice about the plea agreement as evidence that communications had broken down, and the district court's response was addressed to that argument, not to the merits of the expired plea deal, let alone to the merits of an open plea no one anticipated.

## B. Adequacy of counsel

Four of Hicks's claims on appeal boil down to an attack on the adequacy of his representation: 1) his appeal of the denial of counsel's motion to withdraw; 2) his ineffective assistance claim based on a conflict of interest that allegedly arose when Hicks refused his counsel's advice; 3) Hicks's assertion that a failure to seek reinstatement of a lapsed offer for a plea bargain was ineffective assistance of counsel; and 4) his contention that the guilty plea was involuntary because it was coerced by counsel's ineffective representation. The first of these we can resolve; the others we will not address on direct review. We sketch Hicks's asserted problems with his counsel before discussing each claim in turn.

In general, although Hicks claimed his counsel was unprepared, he offers only his observation that counsel had not subpoenaed the witnesses Hicks had proposed. Without more, this might reflect a difference of opinion about trial strategy, but not a lack of preparation amounting to ineffective assistance. Hicks alleges no admission by his counsel that counsel was in fact unprepared. Nor did counsel represent to the court that he was unready for trial. The district court noted that counsel had represented Hicks ably at every step of the process up to trial. Without specific, colorable allegations, Hicks could not convince the district court that counsel was unready, nor can he convince us. Hicks alleges that communication had broken down, but the only breakdown on the record is that Hicks did not like the advice he was getting. We address each of Hicks's specific arguments below, but they all suffer from the same infirmity: there is no evidence that his counsel failed in his duties.

First, Hicks argues that the district court should have granted counsel's motion to withdraw. In our view, the district court appropriately inquired of both Hicks and his counsel to determine the nature and extent of the problem, and decided the matter well within its discretion.[8] In reviewing the denial of a

[8]    Because we find Hicks's claim unavailing on direct review in any event, we need not adopt the position, urged by the government, that under the Tollett doctrine a guilty plea constitutes a waiver of the right to appeal a motion for substitute counsel or a motion to withdraw. See Tollett v. Henderson, 411 U.S. 258, 267 (1973)

-10-

motion for new appointed counsel, or a motion to withdraw in a case with appointed counsel, we examine "(1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." United States v. Van Anh, 523 F.3d 43, 48 (1st Cir. 2008) (internal quotation marks omitted) (quoting United States v. Allen, 789 F.2d 90, 92 (1st Cir. 1986)) (articulating test in the context of denial of motion for new counsel); see United States v. Reyes, 352 F.3d 511, 515 (1st Cir. 2003) (applying same test for counsel's motion to withdraw). Here, the motion was made the day of jury empanelment, the district court conducted a thorough inquiry, and the record does not show a complete breakdown of communication. Accordingly, the district court did not abuse its discretion in denying the motion to withdraw.

---

(holding that a guilty plea waives later challenge to racial composition of grand jury). The government urges us to follow the trail blazed by the Ninth Circuit in United States v. Foreman, 329 F.3d 1037, 1038-39 (9th Cir. 2003). That case held that a guilty plea constituted a waiver of the right to appeal a denial of a motion for substitute counsel. But Foreman was careful to exclude from its holding cases where the voluntariness of the guilty plea was also attacked. Id. at 1039 ("[T]he right to appeal a pre-plea motion for substitution is waived by an unconditional plea, unless the plea itself is challenged." (emphasis added)). Hicks does challenge the voluntariness of his guilty plea. These matters are better left for collateral proceedings, but we note in passing that the Sixth Amendment right to counsel is closely linked to the guilty plea itself, and therefore this case presents a less comfortable fit for the strictures of Tollett.

Next, Hicks argues that his refusal to heed counsel's advice to plead guilty created a conflict of interest that only deepened every time Hicks expressed his dissatisfaction with counsel.  Due to this conflict of interest, Hicks claims, he did not receive the effective representation that is his right under the Sixth Amendment.

We have on occasion entertained such claims on direct appeal, but only when facts point to specific, colorable evidence of actual misconduct.  See United States v. Segarra-Rivera, 473 F.3d 381, 385 (1st Cir. 2007) (direct review of conflict of interest appropriate where there is a colorable claim of actual misconduct).  In Segarra-Rivera, for instance, the defendant alleged that his guilty plea had been coerced by his counsel, who had "ambushed" him with a visit from his tearful wife, refused to leave without a signed plea agreement, and was wholly unprepared for trial.  Counsel then argued against his client's motion to withdraw the guilty plea, pointing out flaws in the motion and intimating that witnesses could prove his client's guilt.  Id. at 383-84.  We remanded for an evidentiary hearing on the conflict of interest issue, relying on our conclusion that the misconduct alleged was more than professional negligence.[9]  Because Hicks has

_____

[9]    Segarra-Rivera concerned only whether the district court erred in refusing to hold an evidentiary hearing with new counsel on the conflict-of-interest claim, and did not address the merits of the claim.  After remand and a hearing, Segarra abandoned his motion to withdraw his guilty plea, and the district court cleared original

-12-

made no such showing, this claim must await a collateral proceeding.

Hicks also confronts the adequacy of his counsel more squarely in advancing two garden-variety ineffective assistance of counsel claims. He claims that when he elected to plead guilty after the jury had been empaneled the morning of trial, counsel should have requested that the government again extend to Hicks its original offer; he further claims that counsel should have filed a formal motion to withdraw the guilty plea. These alleged lapses as well must be presented first to the trial court for factual development. Massaro v. United States, 538 U.S. 500, 505 (2003) ("[I]neffective-assistance claims ordinarily will be litigated in the first instance in the district court, the forum best suited to developing the facts necessary to determining the adequacy of representation during an entire trial."). "In all but extraordinary circumstances, . . . a claim of ineffective assistance that is raised for the first time in this court will not be entertained." United States v. Martins, 413 F.3d 139, 155 (1st Cir. 2005). Although this is not an absolute rule, we are not confronted here with one of the "cases in which trial counsel's ineffectiveness is so apparent from the record that" the issue may be decided on direct appeal. Massaro, 538 U.S. at 508.

---

counsel of any impropriety. United States v. Segarra-Rivera, 485 F. Supp. 2d 21, 22 (D.P.R. 2007).

Finally, Hicks claims that because his counsel was unprepared for trial, his guilty plea was involuntary and the district court committed reversible error in finding otherwise, an error the court compounded when it denied Hicks's motion to withdraw his guilty plea at sentencing. This claim logically depends on the allegations of misconduct, conflict of interest and ineffective assistance in the other claims, and so must fare as they do.

### III. Conclusion

"'We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court.'" United States v. Leahy, 473 F.3d 401, 410 (1st Cir. 2007) (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)). Hicks may choose to pursue his allegations that his counsel was conflicted and ineffective in a collateral proceeding. Regardless, on direct review, there is not enough to support his claims. The district court neither abused its discretion in denying counsel's motion to withdraw, nor improperly participated in plea negotiations. **Affirmed.**